### WILLIAM F. HUNT v. HAUSER MALTING COMPANY.[1]

June 16, 1905.

Nos. 14,313—(139).

**Former Decision.**

The decision in Hunt v. Hauser Malting Co., 90 Minn. 282, holding, where the latter corporation had, without authority, purchased stock and received dividends thereon for a number of years in the Commercial Bank of St. Paul, it was estopped from denying its constitutional liability, authorized under chapter 272, p. 315, Laws 1899, adhered to and followed.

**Estoppel.**

*Held,* upon the evidence in this case tending to show that when the Commercial Bank was reorganized, its name was changed, and the surrender of a specified number of shares of stock by each holder, as well as the retention and return or repurchase of stock by defendant to aid in restoring its impaired capital, that the malting company, by participating in the reorganization scheme, was further estopped from denying its stockholder's liability.

**Question Immaterial.**

*Held,* that whether or not proof of the manner in which the defendant corporation assented to its agreement to reorganize and change of name was appropriately made was immaterial, and without prejudice to the defendant's rights in this case.

[1] Reported in 103 N. W. 1032.

Action in the district court for Ramsey county by plaintiff as receiver of Allemannia Bank, insolvent, to recover from defendant corporation as owner of fifty shares of the capital stock of the bank, an assessment of one hundred per cent., amounting to $5,000, levied thereon by the district court in proceedings under chapter 272, Laws 1899. The case was tried before Olin B. Lewis, J., and a jury, which rendered a verdict in favor of plaintiff for the sum demanded. From an order denying a motion for judgment notwithstanding the verdict or for a new trial, defendant appealed. Affirmed.

*O'Brien & Albrecht,* for·appellant.

The decision on the former appeal herein (90 Minn. 282) entirely obliterates the clear line of demarkation heretofore uniformly recognized in the previous decisions of this court between the mere excessive or irregular exercise of corporate powers and the unwarranted usurpation of such as have been designedly withheld. The doctrine of nullification by estoppel, first announced in that decision, must necessarily have the effect, in its practical operation, of wholly abrogating the fixed limitations imposed by the state from the weightiest considerations of public policy upon the different varieties of corporate activity.

The question of public policy involved in corporate stockholding by corporations can hardly be considered an open one in this country. Corporations have quite enough power without allowing them to incorporate themselves in new companies. The purchase of stock in another corporation involves a participation in a new and distinct enterprise. A corporation can make such a purchase only when expressly authorized to do so by statute, or when the power can be implied as incidental to the powers specifically granted. Noyes, Intercorporate Relations, § 264; 1 Thompson, Corp. § 1102; Nebraska v. Horton (Neb.) 93 N. W. 225. The statutory authority under which the Allemannia bank was originally organized, provides that any association of persons not less than three in number may become incorporated as a banking institution. G. S. 1866, c. 33, § 10, as amended; see G. S. 1894, § 2490. The word "persons," however, as used in this connection has no application to corporations and corporate stockholding receives no sanction therefrom. On the contrary: Statutes authorizing

"persons" to accept a charter or form a corporation under general laws, confer the privilege upon individuals and not upon corporations. Noyes, Intercorporate Relations, § 266, et seq. Stockholding in the Allemannia Bank by another corporation, such as the defendant, constitutes not merely a voidable transaction. It is both malum prohibitum and inherently wrong, because it is in direct contravention of implied statutory prohibition and the settled public policy of this state for nearly forty years. It involves not only the individual rights of creditors and stockholders of two private corporations, but also, in a large measure, considerations of paramount public interest. Seymour v. Bank of Minnesota, 79 Minn. 211, 223; Rochester Ins. Co. v. Martin, 13 Minn. 54 (59); Concord First Nat. Bank v. Hawkins, 174 U. S. 364; Shaw v. National G. A. Bank of St. Paul, 132 Fed. 658; In re S. P. Smith Lumber Co., 132 Fed. 620; Metropolitan v. Lyndonville, 76 Vt. 303; Chicago v. Southern (Ind.) 70 N. E. 843; Montgomery v. Whitbeck, 12 N. D. 385; Patrons of Industry v. Plum, 84 App. Div. 96; Leigh v. American, 205 Ill. 147.

Everyone dealing with a corporation is obliged to take notice of the limitations of its powers. Senour Mnfg. Co. v. Church Paint & Mnfg. Co., 81 Minn. 294; Nicollet Nat. Bank v. Frisk-Turner Co., 71 Minn. 413; Kraniger v. People's Bldg. Soc., 60 Minn. 94; Rochester Ins. Co. v. Martin, supra.

*James E. Trask,* for respondent.

LOVELY, J.

Action to recover upon the constitutional liability of defendant as the holder of fifty shares of the stock of the Allemannia (formerly Commercial) Bank of St. Paul. The cause was tried to the court, who directed a verdict in favor of plaintiff receiver, provided the jury should find a certain assignment was fraudulent. A verdict for plaintiff was returned. There was a motion for judgment notwithstanding the verdict or for a new trial, which was overruled. This appeal is from that order.

This is the second review of this cause. When it was here before on demurrer to the sufficiency of the complaint we held that the defendant corporation was not authorized to purchase and hold stock in the Commercial Bank, but that, having done so, and received dividends

for a number of years with knowledge of all its stockholders, it was estopped from asserting immunity in a suit to recover the stockholders' liability under Laws 1899, p. 315, c. 272, when sought to be enforced by the receiver of the insolvent bank. Hunt v. Hauser Malting Co., 90 Minn. 282, 96 N. W. 85.

On this hearing we have been urged to reconsider the conclusion we arrived at in the former decision, wherein the ultra vires character of the acts of the corporation in purchasing the stock were asserted, but held to be unavailing. The learned trial judge on the demurrer denied the liability of the malting company under the rule laid down in California Bank v. Kennedy, 167 U. S. 362, 17 Sup. Ct. 831, with which we did not agree. Our attention has been called to other decisions, and counsel insists that the rule we adopted is not consonant with the weight of authority or sound reason, and would be fraught with injurious consequences. We have, in deference to the earnestness of counsel, and in order to repair incorrect views if found to exist, afforded full consideration to the additional arguments advanced on this review, as well as to the new decisions cited.

While the act of the malting company in the purchase and holding of the bank stock was outside its corporate authority, this would have been a perfectly legal transaction between individuals. The stockholding was profitable to the defendant. It was concurred in by all its stockholders, and impaired to some extent the bank capital, and we continue to be unable to discover any good reason why, when misfortune came, the malting company should be permitted to deny its liability. It seemed then, and still seems, to us upon plain principles of justice and right that the corporation could not thus play fast and loose, have the benefits of its stockholdings, and as to the executed contract refuse to bear the burdens when responsibility came to the detriment of the creditors and its associate stockholders. We do not find upon examination that the weight of authority is against our previous conclusion. While there is a difference in the decisions of other states, our view is sustained by a majority in character and standing of the cases in this country bearing upon the question, and upon sound principle we are constrained to adhere to our former convictions.

At the trial of the cause it appeared that the predecessor of the Allemannia Bank had a capital of $500,000, there being five thousand shares

95 M.—14

of $100 each. The bank became insolvent in 1892. An assignee was appointed. It went into liquidation. The stockholders, among whom was the defendant, interested themselves in trying to save what might be realized by a reorganization. A plan for that purpose was adopted, which was to the effect that the stockholders should contribute seventy per cent. of the stock held by each to be turned over to a stock trustee to be sold, and thereby obtain funds to restore the impaired capital of the concern, and enable it to resume and continue business, subject to the further condition that there should not be a resumption unless $250,000 of the stock so subscribed should be sold by the trustee, in which case there would remain $100,000 of the capital unsold, which should be canceled when the total capital of the bank would be $400,000. According to this plan each stockholder retained thirty per cent. of his original holding, and might purchase as much or little of the stock in the hands of the trustee as he desired. The defendant contributed seventy shares of its stock, purchasing back twenty shares of the trustee, whereby it would then hold fifty shares thereof in case of resumption, and would only be subjected, in case of subsequent failure after the prescribed time, to one-half of the amount of the statutory liability incurred on its original holdings. The plan succeeded. The bank resumed. It ran on for a while, but again became insolvent; and it seems obvious to us that the same grounds which led to the conclusion that the defendant was estopped from asserting its ultra vires acts in defense of the stockholders' liability applied with equal and more force to the stock still retained as before the reorganization.

The theory that there was a surrender of all the stock, which relieved the stockholders from liability on what is termed a reissue, is extremely technical. It might appear to be reissued in form, but in substance the original liability on one hundred shares of the stock of the malting company had been reduced. Its stock in the bank had been cut down one-half. The stockholders' liability had also been reduced to the same proportionate extent; and, while there was an apparent reissue of the stock, this was merely formal, and arose entirely from the desire and efforts of the malting company, as well as other stockholders, to protect their interests, whereby the defendant, by a contribution of $2,000, aided in starting the bank again on its feet, replenished its exchequer,

and gave for the time, at least, a stability to the bank, which it had lost in hopes undoubtedly that further profit might result to it, and that defendant would be relieved from impending liability. That the bank again collapsed, and the day of reckoning finally came, was not, probably, anticipated; but the efforts of the malting company to save that which it was liable to lose evidenced a continuity in act and interest in its stockholdings which it relied upon, and repudiated only when the ultimate misfortune it had attempted to avert arrived, and the processes of bookkeeping by which the formal holdings were changed in asserted character is of no account. The interest of the defendant upon its original investment remained throughout. We are very clear that the learned trial court was right in its conclusion that the liability of the defendant upon the reissued stock was of binding obligation to uphold the stockholders' liability.

It was objected that at the meeting of the stockholders for the purposes of reorganization, where a resolution to change the name of the bank was adopted, the signature attached to such resolution was not properly authenticated. We deem this to be an exceedingly technical objection, resulting in no prejudice to the defendant whatever. From the entire record there can be no doubt but there were fifty shares of the original stock, though reissued or retained by defendant, and that it continued its original stockholdings after the bank resumed its business, and when its last insolvency was made the basis of the receiver's action in this suit. It is therefore rightfully held to be liable in this action.

Order appealed from is affirmed.